IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF NEW MEXICO

IN RE: THE MEMBERSHIP
OF ERIC D. DIXON, Esquire,
An Attorney admitted to
Practice law in the United
States District Court for
New Mexico

## <u>NOTICE PURSUANT TO D.N.M.L.R-CIV. 83.2 (f) OF SUSPENSION</u>
## <u>AND REQUEST FOR RELIEF FROM RULE OF GOOD STANDING</u>

COMES NOW, Eric D. Dixon, Attorney and Counselor at Law pursuant to

D.N.M.L.R-Civ. 83.2 and hereby gives notice:

1.      On November 9th, 2018, the New Mexico Supreme Court entered an

"Order" suspending counsel indefinitely thirty (30) days from the date of this

order,and for a period of time of no less than nine (9) months." The name and

address is: New Mexico Supreme Court, 237 Don Gaspar Avenue, Santa Fe, New

Mexico, 87501.

2.      Counsel asks for relief from the rule of good standing pursuant to

D.N.M.L.R 83.2 because the procedure resulting in discipline by the court was so

lacking in notice or opportunity to be heard as to deny due process; that the

application of the good standing rules in subdivision would result in grave

injustice; and the kind of misconduct warrants substantially less severe discipline.

1

3.   **Background:** A disciplinary complaint was made by the contract County attorney on April 3rd, 2017 regarding litigation involving the Roosevelt County jail. On October 9th, 2017 "Specification of Charges" were filed by Assistant Disciplinary Counsel alleging violation of Rules 16-101; 16-103; 16-301; 16-303; 16-801; and 16-804 NMRA. The "Specification of Charges" made one claim: "'Jessie Aguilar' of the Federal Lawsuit was Jessica Aguilar". The "Specification of Charges" listed five "Factors in Aggravation." A timely Answer to the "Specification of Charges" was made.

A hearing before a Hearing Committee on February 26th and February 27th, 2017 to hear testimony and receive exhibits. Mr. Dixon was the sole witness called by the Assistant Disciplinary Counsel. All exhibits tendered by the Petitioner were received into evidence. Mr. Dixon called two other witnesses besides himself and entered exhibits as well.

On April 30th, 2018 the Hearing Committee Recommended a six-month suspension. However, if "Respondent forthrightly acknowledge[d] his violations, the Committee would recommend deferral of the suspension if Mr. Dixon had no further disciplinary violation for a period of three (3) years.  On June 22nd, 2018 oral argument was held before a Board Panel.

2

On June 22nd, 2018 oral argument was held before the Disciplinary Board

Hearing Committee. On August 13th, 2018 the "Board Panel's Decision, Report and

Recommendation" was for a one-year suspension with the requirement that Mr.

Dixon take and pass the multi-state professional responsibility examination. On

November 9th, 2018, the New Mexico Supreme Court then suspended Petitioner

for an indefinite period and at nine months Petitioner could ask for

reinstatement.

4.      **Denial of due process:** The Panel claims that "[t]he claims filed on behalf of

Jessie Aguilar based on New Mexico law lacked a good faith basis, as no notice

was ever provided on behalf of Jessie Aguilar in accordance with the New Mexico

Tort Claims Act." This "finding" is really a conclusion of law and over-rules a

number of New Mexico cases directly on point. New Mexico Courts have

"consistently applied the 'likelihood that litigation may ensure' standard" in

determining whether the governmental entity had actual notice and thus written

notice was waived. *See, Lopez v. State,* 1996-NMSC-071, ¶¶8-12, 122N.M.611,

930P.2d146.

Secondly, this issue was never raised in the underlying civil law-suit. Nor did

the Specification of Charges raise this issue. This the late raising of this issue is

again a denial of due process of law. *See, Mills v. New Mexico State Bd. of*

3

*Psychologist Examiners,* 1997-NMSC-028, ¶14,123N.M.421, 941P.2d502(due

process prohibits deprivation of a property right without notice of the basis for

the government action; the opportunity to orally present a case including

evidence and witnesses and a decision based on the evidence presented at the

hearing accompanied by an explanation of the decision.

The Hearing Committee Found in Finding of Fact Number 62:

> On April 14, 2017, in an email to the New Mexico Disciplinary Board, Mr.
> Dixon stated that no deposition notice was ever provided for Jesse Aguilar
> in the Federal Lawsuit. A. This is untrue, and a notice had been issued, but
> there is not clear and convincing evidence that Mr. Dixon was aware of that
> notice when he made this statement. [HC-FOF-62 a].

The Board Panel being dissatisfied with this finding made its own finding of fact:

> On April 14, 2017, in an email to the New Mexico Disciplinary Board, Mr.
> Dixon stated: 'Neither the deposition of Jesse Aguilar of Jessica Aguilar was
> ever notice[d] or requested.' This is untrue. A Notice of Deposition for
> Jessie Aguilar was issued/served on Respondent on [sic] via e-mail on
> January 20, 2015. Mr. Dixon had constructive notice, if not actual notice, of
> Jessie Aguilar's deposition having been noticed when he made this
> statement to the Disciplinary Board."[BP-FOF-11 a].

The "Specification of Charges" filed by the Petitioner on September 27th, 2017

made no such allegation. The 5th and 14th Amendments to the United States

Constitution along with Art. II § 18 require adequate notice of the charges before

important rights may be taken. *See, Mc Coy v. New Mexico Real Estate*

*Commission,* 1980-NMSC-081, 94N.M.602, 614P.2d14(It is well settled that the

4

fundamental requirements of due process in an administrative context are

"reasonable notice and opportunity to be heard and present any claim or

defense."). Further, the Petitioner made no request for such a finding. *See* Rule 1-

052(A) NMRA ("In a case tried by the court without a jury,… the court shall enter

findings of fact and conclusions of law when a party makes a timely request.").

Disciplinary Counsel did not seek to set aside Finding of Fact 62. [Disciplinary

Counsel's Brief to Board Panel]. Petitioner did not attempt to admit any such

document as an exhibit. Jessica Aguilar's deposition was never noticed by the

Defendant-this statement is absolutely true. There is absolutely no evidence in

the record to suggest that the statement that there was no deposition notice for

Jessie Aguilar was intentionally made to mislead by clear and convincing evidence.

*See, In re Convisser,* 2010-NMSC-037, ¶20, 148N.M.732, 242P.3d299.

The charges against Petitioner have been a moving target. Originally, there

was one claim that Petitioner knew that Jessie Aguilar and Jessica Aguilar were

the same person. The charges then morphed into an ever changing theory

without notice or opportunity to challenge these new theories with testimony

and/or other evidence including exhibits.

The Board Panel in Finding Number 14 upholds the Hearing Committee's

Finding of Fact Number 24. The Hearing Committee claimed that "Mr. Dixon had

numerous opportunities, including in these proceedings, where it would have

been to his advantage to raise the matter of Roy Montano telling him about a

nephew, Jessie Aguilar, prior to Mr. Montano's death in May 2017, but Mr. Dixon

did not raise that matter until after Mr. Montano's death."  The Finding of Fact

makes the impermissible assumption that Mr. Dixon was able to contact Mr.

Montano. Secondly, Mr. Dixon's deposition was taken by disciplinary counsel long

before formal specification of charges were filed. Mr. Dixon was asked:

> Q. Why did you bring a lawsuit in federal court on behalf of various
> plaintiffs, including Jessie, which is J-e-s-s-i-e Aguilar?
> A. Yeah. My best understanding it there is an extended family that I've
> represented for many years, Roy Montano—Montano is the uncle of Jessica
> Aguilar. And when I spoke to Mr. Montano, my recollection was that he
> said he had a nephew by the name of Jesse Aguilar that had been pepper-
> ball sprayed. [Deposition of Eric Dixon-June 24th, 2017, pg. 3, ¶¶21-25, pg.
> 4, ¶¶1-5].

Disciplinary counsel was well aware of this fact because she introduced the

obituary notice for Roy Montano at the hearing of this matter.  The Hearing

Committee further erred as a matter of law in placing the burden of proof on the

Respondent instead of the Petitioner. *See,* NMRA Rule 17-301 B.; NMRA Rule 13-

302B.; *Pentecost v. Hudson,* 1953-NMSC-001, ¶6, 57N.M.7, 252P.2d511("The

fundamental principle is that the burden of proof in any cause rests upon the

party who, as determined by the pleadings or the nature of the case, asserts the

affirmative of an issue and remains there until the termination of the action).

Finally, no negative inference should have been placed on the failure to produce a

witness as there are many reasons why a witness is not or cannot be produced

including non-availability.

   The Panel claimed that "[t]he claims filed on behalf of Jessie Aguilar based on

New Mexico law lacked a good faith basis, as no notice was ever provided on

behalf of Jessie Aguilar in accordance with the New Mexico Tort Claims Act." This

"finding" is really a conclusion of law and over-rules a number of New Mexico

cases directly on point. New Mexico Courts have "consistently applied the

'likelihood that litigation may ensure' standard" in determining whether the

governmental entity had actual notice and thus written notice was waived. *See,*

*Lopez v. State,* 1996-NMSC-071, ¶¶8-12, 122N.M.611, 930P.2d146.

        Secondly, this issue was never raised in the underlying civil law-suit. Nor did

the Specification of Charges raise this issue. This the late raising of this issue is

again a denial of due process of law. *See, Mills v. New Mexico State Bd. of*

*Psychologist Examiners,* 1997-NMSC-028, ¶14,123N.M.421, 941P.2d502(due

process prohibits deprivation of a property right without notice of the basis for

the government action; the opportunity to orally present a case including

evidence and witnesses and a decision based on the evidence presented at the hearing accompanied by an explanation of the decision.

Clear and convincing evidence means "evidence that instantly tilts the scales in the affirmative when weighted against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *Lance K.,* 2009-NMCA-054¶16, 146N.M.286, 209P.3d778. Here there was no clear and convincing evidence that Mr. Dixon intended to intentionally mislead the court by claiming that he filed a Motion to Amend the Complaint filed in Federal Court to bring Jessica Aguilar into the law-suit.

Despite the fact that the issue regarding whether "Mr. Dixon never intended for the Proposed First Amended Complaint to bring Ms. Aguilar into the Federal Lawsuit" was not properly before it, the Hearing Committee found in paragraph 35 by "clear and convincing evidence that Mr. Dixon never intended for the Proposed FAC to bring Ms. Aguilar into the Federal Lawsuit." [HCFOFCOL-35]. This Finding of Fact is the basis of the Hearing Committee's Conclusion of law that:

> There is clear and convincing evidence that Mr. Dixon intentionally misled the court in the State Lawsuit in his Reply Brief in the State Lawsuit by asserting, "Counsel  always intended to file a law-suit for Jessica Aguilar and in fact filed a Motion to Amend the Complaint filed in Federal Court to bring Jessica Aguilar into the law-suit."(emphasis added).

The Motion to Amend was filed in the United States District Court on October

10th, 2014 and never ruled upon.  Secondly, an alleged mis-statement of fact

regarding Mr. Dixon's intention to bring Jessica Aguilar into the Federal law-suit

through the Motion to Amend some fifteen months between the time the Motion

to file First Amended Complaint and the Reply to Defendant Roosevelt County's

Response to Plaintiff's is understandable given the literally thousands of pages of

documents that were generated in the case; Mr. Dixon's extremely busy practice

and the terminal illness and death of his parents during this time period.

It is undisputed that Ms. Aguilar was affected by the fumes from the

indiscriminate pepper-ball spray.

> No attempt to ventilate the area was made by the Defendants. No attempt
> was made to allow the Plaintiffs to wash off the pepper spray from the
> bedding and other affected areas. This caused Plaintiffs respiratory
> problems and headaches. In addition, the Plaintiffs were not allowed to
> shower or change the blankets which have residue for weeks.

The proposed Amended Complaint also noted that "[a]ll Plaintiffs were then

required to submit to humiliating strip searches." Ms. Aguilar's October 18th, 2013

Notice of Tort Claim was as a result of being "forced to endure a body cavity

search against her wishes." Notice was given for claims of "assault/battery, cruel

and unusual punishment, search and seizure without probable cause and

violation of her rights, privileges and immunities under the United States

constitution." The proposed Amended Complaint brought claims for "assault and

battery and "cruel and unusual punishment". Thus, it is easy to see why Mr. Dixon

may not have been as careful in his word-choice, and might have misspoken

regarding the proposed Amended Complaint, given the number of victims,

enormous amount of paper-work generated; difficulty in finding and speaking to

clients.

   The Conclusion of Law  H claimed without factual basis that "Mr. Dixon

knowingly made a false statement of fact during this disciplinary matter" without

revealing specifically what alleged "false statement" was made. The Specification

of Charges made in this matter alleged that Mr. Dixon knew Jessie Aguilar and

Jessica Aguilar were the same person. [SOC-37, 41,43, 48]. The misrepresentation

that Assistant Disciplinary Counsel claimed in her Proposed Findings of Fact and

Conclusion of Law was that "Jessica Aguilar was the 'Jessie Aguilar' in the Federal

Lawsuit, and Respondent knew it." [DCPFOF-¶75]. The Hearing Committee

rejected this sole assertion of violation of the Rules of Professional Conduct made

by the Assistant Disciplinary Counsel. [FOFCOL-51a, 52, 60]. However, the Hearing

Committee then attempted to make a case that had not been plead, raised, or

argued by the parties. This un-plead and un-argued claim comes as an absolute

surprise and severely prejudices Mr. Dixon. The conclusions regarding the Reply

should not and cannot be allowed without violating Mr. Dixon's due process

rights (both substantive and procedural). *See, Maso v. State Taxation & Revenue*

*Dep't, Motor Vehicle Div.,* 2004-NMSC-028, ¶10, 136N.M.161, 96P.3d286.

5.      The Hearing Committee in Conclusion 10 a concludes as a matter of law

that Mr. Dixon "has a prior disciplinary offense for which he received a public

censure." First, a Special Board Panel in Disciplinary Number 10-2011-634-

Supreme Court Number 33, 713 found that the claim that Mr. Dixon engaged in

action prejudicial to the administration of justice on April 5th, 2011 was not

established as a matter of law.  On March 31st, 2013 the "Special Counsel" in a

one page "Petition for Review" sought review in the New Mexico Supreme Court.

Over two years later on August 29th, 2015, the New Mexico Supreme Court over-

turned the Special Board Panel's recommendation and issued a written "public

reprimand" for an incident occurring over four years earlier despite the fact that

Mr. Dixon had no further involvement in the disciplinary system. The evidence

that the Supreme Court used regarding past disciplinary infractions (a letter of

reprimand), was the result of upon information and belief, a number of

impermissible ex parte contacts with members of the Supreme Court without

knowledge and/or consent of Petitioner. As noted, a Special Panel appointed by

the Supreme Court had determined that the Specification of Charges should be dismissed for lack of evidence. However, the Supreme Court, upon information and belief was subjected to repeated and improper ex parte contacts which resulted in a letter of reprimand being issued two years after oral argument before the Supreme Court. An evidentiary hearing should be held regarding this issue of improper ex parte contacts.

6.     The Jessica Aguilar appeal is still pending in the New Mexico Court of Appeals, and the Court should defer any judgment until this appeal is finally resolved.

7.     Petitioner represents poor and unpopular clients in Federal Court and is one of the few attorneys in Eastern New Mexico that is willing to undertake such representation. The public will be harmed as a result of lack of access to an attorney with such abilities and result in a grave injustice.

   WHEREFORE, Petitioner asks that the Court relieve Petitioner from the Rule of Good Standing after an evidentiary hearing because the procedure resulting in discipline by the court was so lacking in notice or opportunity to be heard denied due process; that the application of the good standing rules would result in grave injustice; and because the kind of alleged misconduct warrants substantially less

severe discipline; and for such further and additional relief as the Court deems

appropriate.

Respectfully Submitted:

/s/ Eric D. Dixon

_____

Eric D. Dixon
301 South Avenue A,
Portales, New Mexico, 88130
(575) 359-1233
Facsimile: (575) 356-4946